**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____x

ABRANEIKA WALTERS,

                    Plaintiff,                  **COMPLAINT**

      -against-

                                      Docket No.: 22-CV-1907

STARBUCKS CORPORATION, TAFSIR
MBODJE, and NICK TOBIAS,           **JURY TRIAL DEMANDED**

                    Defendants.
_____x

Plaintiff Abraneika Walters ("Plaintiff" or "Ms. Walters"), by and through her attorneys, Brustein Law PLLC and Risman & Risman, P.C., as and for her Complaint in this action against Defendants Starbucks Corporation ("Starbucks" or "Defendant Starbucks"), Tafsir Mbodje ("Defendant Mbodje"), and Nick Tobias ("Defendant Tobias") (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

## INTRODUCTION

1. This action is brought to remedy discrimination on the basis of gender and sexual harassment in violation of New York Executive Law § 296 et seq. (the "New York State Human Rights Law") and New York City Administrative Code § 8-101 et seq. (the "New York City Human Rights Law").

2. This action arises from the hostile work environment, unequal treatment, sexual harassment, gross negligence, and retaliation that the Plaintiff endured as an employee of the Defendants.

3. At all relevant times, Starbucks employed more than four employees and constituted an "employer" within the meaning of New York Executive Law, § 292(5).

4. Ms. Walters is a female and is a member of a protected class.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this action involves diversity of citizenship and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the sexual harassment alleged herein, occurred in this district.

7. This dispute arose at the time this Complaint was filed in the Southern District of New York.

## JURY DEMAND

8. Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PARTIES

**(a) Ms. Walters**

9. Ms. Walters is a resident of Jersey City, and the State of New Jersey.

10. On or about December 2019, Ms. Walters began her employment with Starbucks as a full time employee. Ms. Walters was hired and given the position of Store Manager. Ms. Walters was assigned to work at the Starbucks location located at 55 Broadway, New York, New York ("Starbucks on Broadway").

11. At all relevant times, Ms. Walters was and still is entitled to the equal benefit and protection of the laws of the City and State of New York, and to established civil rights to which she was and is entitled to under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

12. Ms. Walters is a female.

13. During Ms. Walters' employment with Starbucks, she was repeatedly subjected to verbally abusive, lewd, sexually pervasive, intolerable and unlawful employment practices that violated her rights under the NYSHRL and NYCHRL.

14. Upon information and belief, at all relevant times herein, Starbucks is a Washington State corporation, authorized to do business in the State of New York, having a principal place of business at 2401 Utah Avenue, S, S-CR1, Seattle WA 98134.

15. Upon information and belief, Starbucks was and still is a foreign corporation authorized to do business in New York, with a principal place of business at 2401 Utah Avenue, S, S-CR1, Seattle WA 98134.

16. Upon information and belief, Starbucks was and still is a foreign corporation authorized to do business in New York, with a place of business at Starbucks on Broadway, located 55 Broadway, New York, New York.

17. At all relevant times, Starbucks employed more than four employees and constituted an "employer" within the meaning of NYSHRL AND NYCHRL.

18. At all relevant times, Starbucks was and is an employer as defined by Section 8-102 of the Administrative Code of the City of New York and employs fifteen (15) or more employees.

19. Upon information and belief, the address of Starbucks' headquarters is 2401 Utah Avenue, South, Suite 800, Seattle, WA 98134.

20. Plaintiff was employed by Starbucks and worked at the Starbucks located 55 Broadway, New York, New York, and was the Store Manager at that New York City location.

 **(c) Tafsir Mbodje**

21. Defendant Tafsir Mbodje ("Mbodje") was employed by Defendant Starbucks during the relevant period as a District Manager, overseeing the location where Plaintiff was the store manager.

22. Upon information and belief, at all relevant times herein, Defendant Mbodje resided in County of Kings, State of New York.

23. Upon information and belief, at all relevant times herein, Defendant Mbodje was employed by Starbucks.

24. Upon information and belief, at all relevant times herein, Starbucks employed Defendant

25. Upon information and belief, at all relevant times herein, Defendant Mbodje was supervising the Plaintiff.

26. Upon information and belief, at all relevant times herein, Defendant Mbodje had supervisory authority over the Plaintiff.

27. Upon information and belief, Defendant Mbodje is and was, at all times mentioned herein, an aider and abettor within the meaning of the NYSHRL and NYCHRL.

**(d) Nick Tobias**

28. Defendant Nick Tobias ("Tobias") was employed by Respondent Starbucks during the relevant time period as a District Manager overseeing the location where Plaintiff was the store manager, and had supervisory authority over the Plaintiff.

29. Upon information and belief, at all relevant times herein, Defendant Tobias resided in County of New York, State of New York.

30. Upon information and belief, at all relevant times herein, Defendant Tobias was employed by Starbucks.

31. Upon information and belief, at all relevant times herein, Starbucks employed Defendant Tobias in the position of District Manager.

32. Upon information and belief, at all relevant times herein, Defendant Tobias was supervising the Plaintiff.

33. Upon information and belief, at all relevant times herein, Tobias had supervisory authority over the Plaintiff.

34. Upon information and belief, Tobias is and was, at all times mentioned herein, an aider and abettor within the meaning of the NYSHRL and NYCHRL.

## FACTUAL BACKGROUND

35. Since approximately December 2019 through December 2021, Plaintiff was employed by Starbucks as the Store Manager of the Starbucks on Broadway.

36. Under Plaintiff's leadership, the Starbucks on Broadway received several accolades including

Plaintiff's ability to minimize labor costs for the Starbucks on Broadway while growing the business; and a top Waste Performer recognizing Plaintiff's ability to manage the Starbucks on Broadway's inventory efficiently.

**(a) Abusive and Intolerable Conduct**

37. In July, 2020, Defendant Mbodje was assigned to supervise the Starbucks on Broadway.

38. Shortly thereafter, on July 30, 2020, Plaintiff called Defendant Mbodje to discuss and relay concerns that a female shift supervisor at the Starbucks on Broadway had with her interactions with Defendant Mbodje.

39. During that call, Plaintiff became uncomfortable due to Defendant Mbodje's tone when he raised his voice and threatened her employment for discussing and informing him about the concerns of another female employee.

40. Plaintiff then contacted her human resources contact, Tina McDonald (hereinafter "Starbucks HR"), and Defendant Mbodje's direct supervisor, Sharon Badgett, a Starbucks Regional Director for (hereinafter "Starbucks Regional Director").

41. They informed her that they would follow up with her, but neither did.

42. Instead, on August 6, 2020, during a scheduled supervision visit to the Starbucks on Broadway, Defendant Mbodje took Plaintiff to the side and told her in a threatening tone that he had heard that she had complained about him, but "nothing" was going to be done to him. He also told her that next time she needed come to him directly. He continued to say that if she went to anyone else at Starbucks it will get back to him anyway and "nothing" would happen to him, warning her not to make any more complaints about him.

43. At the beginning of October 2020, Defendant Mbodje came to the Starbucks on Broadway to discuss the company's upcoming holiday launch with the Plaintiff. During that meeting, Defendant Mbodje said that he wanted them to take a ten-minute break. However, rather than letting Plaintiff actually take a break, he began discussing his personal life and seeking information about Plaintiff's personal life. He also told Plaintiff that his wife had "stopped

44. Plaintiff was shocked and uncomfortable by the sudden shift in conversation.

45. Plaintiff felt trapped in the backroom with her superior.

46. Defendant Mbodje continued with this inappropriate line of conversation and also told Plaintiff that he was "unhappy" that his wife was now pregnant again.

47. Defendant Mbodje then asked Plaintiff if she herself wanted to have any more children.

48. Plaintiff tried to shut the conversation down by simply stating said that she was happy with the son she had.  However, that did not stop Defendant Mbodje from continuing this inappropriate conversation.

49. Defendant Mbodje responded that he needed a woman like her who isn't having "these annoying ass kids," and he "just wanted to have some fun."

50. At that time, a shift supervisor walked into the room where Defendant Mbodje and Plaintiff were.  Defendant Mbodje was annoyed that the shift supervisor had entered the room. Defendant Mbodje told the shift supervisor not to come back and not to let anyone else come into the backroom while he was talking to the Plaintiff.

51. After the shift supervisor left, Defendant Mbodje continued his inappropriate conversation and told the Plaintiff that his wife didn't feel like having as much sex when she was pregnant.

52. Defendant Mbodje then asked how Plaintiff's sex life with her significant other was during her pregnancy.

53. Plaintiff was horrified and embarrassed.

54. As Defendant Mbodje was asking about the Plaintiff's sex life, the shift supervisor again walked into the back room.  The shift supervisor apologized and said he needed to get ice for the front of the store.

55. Defendant Mbodje got angry at the shift supervisor and said, "I said I don't want anyone back here right now."  The shift supervisor apologetically and clearly shaken finished getting ice for the front of the store and then left.

56. For the next few months, Defendant Mbodje made frequent scheduled and unscheduled visits

57. Defendant Mbodje would often show up at the Starbucks on Broadway during her shifts and immediately seek her out and go to speak to Plaintiff.

58. During these visits, he would regularly question her about her personal life and her personal relationships.

59. Defendant Mbodje would also regularly speak to Plaintiff about his sexual relationship with his wife.

60. Defendant Mbodje would also talk to Plaintiff about what he thought about the shape of Plaintiff's body, specifically her rear end. He told her that her rear end was big and nicely shaped and that her rear end was better shaped than other women.

61. As Plaintiff constantly told him that she wanted to keep things professional, these conversations made Plaintiff feel extremely uncomfortable.

62. As her supervisor, Defendant Mbodje had access to the Plaintiff's work schedule. Even though her schedule changed from week to week, Defendant Mbodje still managed to appear no matter her schedule towards the end of her shift.

63. On multiple occasions, when Defendant Mbodje had appeared at the end of her shift, when the Plaintiff was leaving the Starbucks on Broadway to go home, Defendant Mbodje would ask if he could walk her to the train.

64. Even though the Plaintiff would refuse this invitation, tell him "no thank you," Defendant Mbodje would follow her and say that he was going that direction anyway.

65. During these walks, Defendant Mbodje would continue to tell Plaintiff how unhappy he was with his sex life.

66. During these walks, Defendant Mbodje would also talk to Plaintiff about the size of his penis.

67. Defendant Mbodje told Plaintiff during these walks that he didn't have anyone to "give it to" and he'd ask if her significant other was "doing his job."

68. The Plaintiff repeatedly told Defendant Mbodje that she wanted to have just a working relationship with him.

Starbucks HR and Starbucks Regional Director would let him know of these complaints like they had previously done, and she needed to be careful not to make him her enemy because she had to take care of her son.

70. On January 26, 2021, Starbucks Vice President Tracey Gaven Bridgman ("Ms. Gaven-Bridgman") visited the Starbucks on Broadway to commend the Plaintiff on her store's success with customer satisfaction.

71. That same afternoon, during a scheduled performance development plan meeting between Plaintiff and Defendant Mbodje, Defendant Mbodje told her that Plaintiff was doing a great job with everything at work, except was not doing a great job with him.

72. Defendant Mbodje said that he had the power to get her to where she needed to go but the Plaintiff needed to "give" herself to him.

73. During that same conversation, Defendant Mbodje continued to tell Plaintiff that Ms. Gaven-Bridgman had asked him which Starbucks stores she should visit in recognition of their success during the pandemic and he had chosen two locations.

74. Defendant Mbodje said that he had chosen the busiest store and Plaintiff's Starbucks on Broadway, letting her know that he did this for her.

75. Defendant Mbodje told her that this was an example of what he could do for her.

76. The Plaintiff thanked him for recommending her location but said that she was not interested in him in that way and wanted her work to speak for itself.

77. During the January 26, 2021 Store Managers' Meeting with Ms. Gaven-Bridgman and Starbucks HR, another store manager, who is gay, shared how Defendant Mbodje had told him that "in Africa being gay means having AIDS."

78. That store manager told the other managers and Ms. Gaven-Bridgman and Starbucks HR that he felt uncomfortable with how Defendant Mbodje had spoken to him and asked to be moved out of Defendant Mbodje's district.

79. At that time, the Plaintiff also then shared with the other managers, Ms. Gaven-Bridgman and

several occasions he had made inappropriate comments to her.

80. As the Plaintiff was about to describe the details of the sexual harassment, she was interrupted by Ms. Gaven-Bridgman, and told not to discuss it during the meeting.

81. After the manager's meeting where Starbucks HR stopped the Plaintiff from discussing the sexual harassment that she was experiencing, Plaintiff and Starbucks HR had a follow up meeting.

82. At that follow up meeting, the Plaintiff again told Starbucks HR that Defendant Mbodje had commented on her body and also said other inappropriate things that made her feel uncomfortable.  The Plaintiff also was upset and complained that her prior complaints about Defendant Mbodje had been ignored and not gone anywhere.

83. At that meeting, Starbucks HR advised the Plaintiff that when she had spoken to Defendant Mbodje about the Plaintiff, Defendant Mbodje had only positive things to say about her, so Starbucks HR considered the matter resolved.

84. Plaintiff sought to have her concerns addressed by the Starbucks Regional Director and a call was scheduled for February 2, 2021.

85. During the February 2, 2021 call, the Plaintiff relayed to the Starbucks Regional Director that Defendant Mbodje had made inappropriate comments to her including discussing the shape of her body.

86. During that call, the Starbucks Regional Director was dismissive and abruptly ended the conversation.  Instead of asking Plaintiff questions about the sexual harassment, the Starbucks Regional Director cut her off from speaking and prevented her from fully detailing the hostile work environment that she was enduring.

87. Approximately one week later, a barista in the Starbucks on Broadway told the Plaintiff that someone from the Starbucks Compliance Department (SCD) was on the phone for her.  The Plaintiff answered the phone behind the counter of her store.

88. SCD asked the Plaintiff to repeat what she had told Starbucks Regional Director.  During this

inappropriate things that made her uncomfortable.  When SCD asked what else he had said, the Plaintiff told her that she was in the middle of working and did not feel comfortable repeating those things because she was in front of her employees and customers.

89. In order to provide the details of the sexual harassment, the Plaintiff asked if she could speak to SCD in private and provided her personal cell phone, but SCD never followed up or called her back.

90. After complaining to Starbucks on multiple occasions about the continuous harassment that the Plaintiff was subjected to by Defendant Mbodje, Starbucks did not conduct an investigation in line with the seriousness of her complaints, and took no remedial measures to prevent the abusive conduct from continuing toward Plaintiff.  Plaintiff was embarrassed and humiliated by being exposed to this abusive conduct and Starbucks' failure to take any action despite Plaintiff's complaints.

91. Starbucks' failure to take any action despite Plaintiff's complaints constitutes gross negligence.

92. Despite the specific information that Plaintiff provided to Defendant Starbucks no investigation was conducted and no remedial measures were taken to prevent the abusive conduct from continuing toward Plaintiff.

93. Plaintiff was embarrassed and humiliated by being exposed to this inappropriate conduct and by the failure of Defendant Starbucks to take any action to protect her.

94. During Plaintiff's employment with Starbucks, she was subjected to an unlawful and a hostile work environment that included, among other things, sexual harassment, humiliation, verbal harassment and offensive remarks by Defendant Mbodje, Plaintiff's Supervisor, on the basis of Plaintiff's gender.

95. The unlawful actions on the part of Defendants resulted in working conditions that were utterly intolerable and unacceptable, and which would cause a reasonable employee to suffer severe mental and physical anguish.

embarrassed and humiliated her.

**(b) Starbucks' Campaign to Ignore Plaintiff's Complaints and Failure to Prevent the Abuse.**

97. No remedial actions were taken by Defendant Starbucks based on the Plaintiff's complaints made to them.

98. Despite the specific information that Plaintiff provided to Starbucks HR and Starbucks Regional Director, no remedial measures were taken to prevent the abusive conduct from continuing toward Plaintiff.

**(c) Starbucks' Retaliation against Plaintiff**

99. Upon information and belief, on February 1, 2021, Defendant Mbodje went on family leave because of the birth of his child.

100.      During Defendant Mbodje's leave, Defendant Tobias took over supervising the Starbucks on Broadway as the District Manager.

101.      In early March 2021, Defendant Tobias informed the Plaintiff that he would be conducting an investigation into the Plaintiff because he had received a complaint about her from a barista at the Starbucks on Broadway.

102.      On or about March 30, 2021, Defendant Mbodje called the Plaintiff from a blocked number and said in sum and substance, "it doesn't feel so good to be on the hot seat, bitch. Watch and see what happens to you."  Then he hung up the phone.

103.      At about that time, the Plaintiff was notified by two different employees that Defendant Tobias and Defendant Mbodje had contacted them and told them to say false and defamatory things about the Plaintiff during their investigation interviews.

104.      Both employees said that Defendant Tobias and Defendant Mbodje told them to say things that were not true such as "She is always late," "She talks down to the staff," and Plaintiff "created a hostile work environment."

105.      The Plaintiff then provided statements to Starbucks from the two employees detailing how they had been told by their superiors to lie about the Plaintiff's management.

and Defendant Mbodje was in retaliation for Plaintiff's complaints of sexual harassment.

107.    On April 29, 2021, without investigating the Plaintiff's report of retaliation related to Defendant Mbodje and Defendant Tobias telling employees to lie about the Plaintiff's management, Starbucks allowed Defendant Tobias to issue the Plaintiff a "corrective action" and placed her on an "action plan" under his review.

108.    After receiving the corrective action and the action plan, Plaintiff again contacted Starbucks, continuing to complain of retaliation. Starbucks acknowledged that disciplinary action was being taken against her, and refused to protect her from this ongoing retaliation.

109.    Starbucks HR also admitted that nothing was done to address Plaintiff's retaliation complaint that Defendant Mbodje and Defendant Tobias were seeking false statements and complaints from employees to push her out of her position.

110.    Upon information and belief, no disciplinary action was ever taken against Defendant Mbodje or Defendant Tobias as a result of Plaintiff's complaints and corroborating witness statements.

111.    Even though Starbucks had statements from multiple employees that Defendant Mbodje and Defendant Tobias had attempted to have employees provide false statements about the Plaintiff, Starbucks continued to allow this retaliation to continue against the Plaintiff.

112.    Starbucks also promoted Defendant Tobias to Senior Partner Relations Associate in approximately June 2021, despite multiple witnesses confirming the inappropriate conduct detailed above.

113.    As a result of the aforementioned sexual harassment, discrimination, and retaliation, the Plaintiff has suffered extreme emotional distress.

(c) **Starbucks' Constructively Discharged Plaintiff From Her Employment**

114.    As a result of Defendants' actions, the Plaintiff was humiliated, embarrassed, depressed, scared, fearful, anxious, and unable to work at Starbucks.

Starbucks, as a result of Starbucks' discriminatory practices.

116.     Starbucks constructively discharged Plaintiff by purposely creating an intolerable work atmosphere so that Plaintiff was not able to work.

117.     As a result of Starbucks engaging in prohibited conduct, Plaintiff had no alternative but to leave her job.

118.     Starbucks created a work environment that was offensive, pervasive, continuous, and hostile.

119.     Plaintiff was treated less well as a result of her gender and complaints of sexual harassment.

120.     Plaintiff was subjected to an environment was so offensive and hostile that it forced her to resign from her position.

121.     The working environment had been made so objectively intolerable that a reasonable person in that position would have felt compelled to leave.

122.     As a result of the conduct described herein, Plaintiff was denied employment opportunities, and, retaliated against, on the basis of her gender.  Due to the willful, malicious, and intolerable nature of the discriminatory actions set forth herein, Plaintiff is entitled to an award of punitive damages.

123.     Defendants' unlawful conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff's protected rights, in whole or in part, with the full knowledge of the Defendants.  Defendants' conduct has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, as well as severe mental anguish and emotional distress.

**(d) Starbucks' Notice of Previous Discriminatory Conduct**

124.     This is not the first time that Starbucks has received a complaint that Defendant Mbodje was covering up sexual harassment.

125.     In <u>Wu v. Starbucks Corporation</u>, 14-CV-3873 (AKH), filed in the Southern District

sexually harass her and Plaintiff Wu further alleged that Starbucks did not conduct an investigation into her complaint of sexual harassment.

126.   Despite knowing that Defendant Mbodje had been previously accused of engaging in this type of discriminatory and retaliatory conduct while employed by Starbucks as a district manager, Starbucks did not protect Plaintiff from the aforementioned discriminatory and retaliatory misconduct.

## FIRST CAUSE OF ACTION
## NYCHRL (Hostile Work Environment)

127.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if they were set forth here in full. The aforesaid actions of the Defendants substantially interfered with the employment of the Plaintiff and created an intimidating, hostile, and offensive work environment for the Plaintiff based on her gender, in violation of the NYCHRL (New York City Administrative Code §8-107).

128.   As a result of the Defendants' violations of the NYCHRL, Plaintiff suffered and continues to suffer economic losses, mental anguish, physical injury, pain and suffering and other losses.

129.   Defendants, failed and/or refused to protect Plaintiff from the aforesaid sexual harassment and/or abate the aforesaid sexual harassment and instead, permitted Defendant Mbodje to remain in his position.

130.   Defendant Mbodje's conduct created a hostile work environment, which was so severe as to alter the conditions of Plaintiff's employment.

131.   By failing to protect Plaintiff, Defendant Starbucks participated in the gaslighting and sexual harassment of the Plaintiff.

132.   The conduct of Defendant Mbodje created a hostile work environment, which was so severe as to alter the conditions of Plaintiff's employment.

133.   The conduct of Defendant Tobias created a hostile work environment, which was so severe as to alter the conditions of Plaintiff's employment.

harassment and/or abate the aforesaid sexual harassment and instead, permitted Defendant Mbodje to remain in his position.

135.    Starbucks by their failure and/or refusal to protect Plaintiff from the aforesaid retaliation and/or abate the aforesaid retaliation and instead, permitted Defendant Mbodje and Defendant Tobias to remain in their positions.

136.    As a matter of fact, Defendant Tobias was promoted although Plaintiff complained that he had been retaliating against her as a result of her complaints of sexual harassment.

137.    As a result of the Defendants' violations of the New York City Human Rights Law, Plaintiff has been damaged in a sum that exceeds the jurisdiction of all lower courts.

138.    Plaintiff also demands the attorneys' fees incurred by the Plaintiff in this action.

139.    Because the Defendants' actions were performed based on the wanton, willful and gross misconduct of the Defendants in an amount to be determined by the jury sufficient to deter similar conduct.

### SECOND CAUSE OF ACTION
### NYSHRL (Hostile Work Environment)

140.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if they were set forth here in full.

141.    The aforesaid actions of the Defendants substantially interfered with the employment of the Plaintiff and created an intimidating, hostile, and offensive work environment in violation of the NYSHRL (Executive Law §296 et seq.).

142.    As a result of the Defendants' violations of the NYSHRL, the Plaintiff has been damaged in a sum that exceeds the jurisdiction of all lower courts.

143.    Plaintiff also demands the attorneys' fees incurred by the Plaintiff in this action.

144.    Because the Defendants' actions were performed based on the wanton, willful and gross misconduct of the Defendants in an amount to be determined by the jury sufficient to deter similar conduct.

**(Disparate Treatment Violations of the NYCHRL)**

145.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if they were set forth here in full.

146.     The requirement that Plaintiff be subject to sexual harassment, verbal abuse, and humiliation constituted unlawful treatment based on gender, in violation of the NYCHRL.

147.     Defendants' discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff to suffer humiliation, embarrassment and emotional distress.

148.     As a result of the Defendants' violation of the NYCHRL, Plaintiff has been damaged in a sum that exceeds the jurisdiction of all lower courts. Plaintiff also demands the attorneys' fees incurred by Plaintiff in this action.

149.     As a result of Defendants' actions being performed with malice and without justification or excuse, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

150.     As a direct result of the Defendants' unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in physical illness and severe emotional stress.

151.     As a further and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, physical injury, outrage, severe anxiety about her future and her ability to support herself, painful embarrassment among her friends and co-workers, damage to her good reputation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

152.     As a result of the Defendants' violation of the NYCHRL, Plaintiff has been damaged in an amount that exceeds the jurisdiction of all lower courts.

153.     Because the Defendants' actions were performed with malice and without justification or excuse, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**(Disparate Treatment Violations of the NYSHRL)**

154. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if they were set forth here in full.

155. The requirement that Plaintiff be subject to sexual harassment, verbal abuse, and humiliation constituted unlawful treatment based on gender, in violation of the NYSHRL.

156. Defendants' discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff to suffer humiliation, embarrassment and emotional distress.

157. As a result of the Defendants' violation of the NYSHRL, Plaintiff has been damaged in a sum that exceeds the jurisdiction of all lower courts. Plaintiff also demands the attorneys' fees incurred by Plaintiff in this action.

158. As a result of Defendants' actions being performed with malice and without justification or excuse, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

159. As a direct result of the Defendants' unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in physical illness and severe emotional stress.

160. As a further and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, physical injury, outrage, severe anxiety about her future and her ability to support herself, painful embarrassment among her friends and co-workers, damage to her good reputation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

161. As a result of the Defendants' violation of NYSHRL, Plaintiff has been damaged in an amount that exceeds the jurisdiction of all lower courts.

162. Because the Defendants' actions were performed with malice and without justification or excuse, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

163.     Plaintiff repeats and realleges the allegations contained in each of the preceding

paragraphs as if they were set forth here in full.

164.     Plaintiff complained to Starbucks that the conduct of Defendant Tobias and Defendant

Mbodje was in retaliation for Plaintiff's complaints of sexual harassment.

165.     On April 29, 2021, without investigating the Plaintiff's report of retaliation related to

Defendant Mbodje and Defendant Tobias telling employees to lie about the Plaintiff's

management, Starbucks allowed Defendant Tobias to issue the Plaintiff a "corrective action"

and placed her on an "action plan" under his review.

166.     After receiving the corrective action and the action plan, Plaintiff again contacted

Starbucks, continuing to complain of retaliation. Starbucks acknowledged that disciplinary

action was being taken against her, and refused to protect her from this ongoing retaliation.

167.     Starbucks HR also admitted that nothing was done to address Plaintiff's retaliation

complaint that Defendant Mbodje and Defendant Tobias were seeking false statements and

complaints from employees to push her out of her position.

168.     Upon information and belief, no disciplinary action was ever taken against Defendant

Mbodje or Defendant Tobias as a result of Plaintiff's complaints and corroborating witness

statements.

169.     Even though Starbucks had statements from multiple employees that Defendant

Mbodje and Defendant Tobias had attempted to have employees provide false statements

about the Plaintiff, Starbucks continued to allow this retaliation to continue against the

Plaintiff.

170.     As a result of the aforementioned sexual harassment, discrimination, and retaliation,

the Plaintiff has suffered extreme emotional distress.

Plaintiff has suffered the indignity of retaliation, the invasion of her rights to be free from retaliation, and great humiliation, which has manifested in illness and severe emotional stress.

172.     As a further and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, injury, outrage, severe anxiety about her future and her ability to support herself, painful embarrassment, damage to her good reputation, disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

173.     As a result of the Defendants' violations of the NYCHRL, Plaintiff has been damaged in a sum that exceeds the jurisdiction of all lower courts.

174.     Because the Defendants' actions were performed with malice and without justification or excuse, Plaintiff is entitled to punitive damages in an amount to be determined at  trial.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

175.     Plaintiff, repeats and realleges the allegations contained in each of the preceding paragraphs as if they were set forth here in full.

176.     As a result of the aforementioned sexual harassment, discrimination, and retaliation, the Plaintiff has suffered extreme emotional distress.

177.     As a direct and proximate result of the Defendants' unlawful employment practices, Plaintiff has suffered the indignity of retaliation, the invasion of her rights to be free from retaliation, and great humiliation, which has manifested in illness and severe emotional stress.

178.     As a further and proximate result of Defendants' unlawful employment practices, Plaintiff has suffered extreme mental anguish, injury, outrage, severe anxiety about her future and her ability to support herself, painful embarrassment, damage to her good

everyday life.

179.    As a result of the Defendants' violations of the NYSHRL, Plaintiff has been

damaged in a sum that exceeds the jurisdiction of all lower courts.

180.    Because the Defendants' actions were performed with malice and without

justification or excuse, Plaintiff is entitled to punitive damages in an amount to be

determined at  trial.

## SEVENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYCHRL)

181.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as

contained in each of the preceding paragraphs as if fully set forth herein.

182.    Defendant Mbodje and Defendant Tobias knowingly or recklessly aided and abetted

the unlawful employment practices, discrimination, harassment and retaliation against

Plaintiff in violation of the NYCHRL.

183.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer,

monetary and/or economic damages, including but not limited to, loss of future income,

compensation and benefits for which she is entitled to an award of damages.

184.    As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe

mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which she is entitled to an award of damages.

## EIGHTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL)

185.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as

contained in each of the preceding paragraphs as if fully set forth herein.

186.    Defendant Mbodje and Defendant Tobias knowingly or recklessly aided and abetted

the unlawful employment practices, discrimination, harassment and retaliation against

Plaintiff in violation of the NYSHRL.

monetary and/or economic damages, including but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

188.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## NINTH CAUSE OF ACTION
### (Constructive Discharge in Violation of the NYCHRL)

189.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

190.     As a result of Defendants' actions, the Plaintiff was humiliated, embarrassed, depressed, scared, fearful, anxious, and unable to work at Starbucks.

191.     As a result of Defendants' actions, the Plaintiff was unable to return to work at Starbucks, as a result of Starbucks' discriminatory practices.

192.     Starbucks constructively discharged Plaintiff by purposely creating an intolerable work atmosphere so that Plaintiff was not able to work.

193.     As a result of Starbucks engaging in prohibited conduct, Plaintiff had no alternative but to leave her job.

194.     Starbucks created a work environment that was offensive, pervasive, continuous, and hostile.

195.     Plaintiff was treated less well as a result of her gender and complaints of sexual harassment.

196.     Plaintiff was subjected to an environment was so offensive and hostile that it forced her to resign from her position.

197.     The working environment had been made so objectively intolerable that a reasonable person in that position would have felt compelled to leave.

198.     As a result of the conduct described herein, Plaintiff was denied employment

and intolerable nature of the discriminatory actions set forth herein, Plaintiff is entitled to an award of punitive damages.

199.     Defendants' unlawful conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff's protected rights, in whole or in part, with the full knowledge of the Defendants.   Defendants' conduct has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, as well as severe mental anguish and emotional distress.

200.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

201.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

### TENTH CAUSE OF ACTION
### (Constructive Discharge in Violation of the NYSHRL)

202.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

203.     As a result of Defendants' actions, the Plaintiff was humiliated, embarrassed, depressed, scared, fearful, anxious, and unable to work at Starbucks.

204.     As a result of Defendants' actions, the Plaintiff was unable to return to work at Starbucks, as a result of Starbucks' discriminatory practices.

205.     Starbucks constructively discharged Plaintiff by purposely creating an intolerable work atmosphere so that Plaintiff was not able to work.

206.     As a result of Starbucks engaging in prohibited conduct, Plaintiff had no alternative but to leave her job.

207.     Starbucks created a work environment that was offensive, pervasive, continuous, and

208.     Plaintiff was treated less well as a result of her gender and complaints of sexual harassment.

209.     Plaintiff was subjected to an environment was so offensive and hostile that it forced her to resign from her position.

210.     The working environment had been made so objectively intolerable that a reasonable person in that position would have felt compelled to leave.

211.     As a result of the conduct described herein, Plaintiff was denied employment opportunities, and, retaliated against, on the basis of her gender.  Due to the willful, malicious, and intolerable nature of the discriminatory actions set forth herein, Plaintiff is entitled to an award of punitive damages.

212.     Defendants' unlawful conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff's protected rights, in whole or in part, with the full knowledge of the Defendants.  Defendants' conduct has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, as well as severe mental anguish and emotional distress.

213.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

214.     As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.


## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Abraneika Walters respectfully requests that this Court enter a judgment in her favor and against Defendants, awarding the following relief:

for all monetary and/or economic damages, including but not limited to, the loss of past or future income, wages, compensation, seniority and other benefits of employment;

b. An award of damages in an amount to be determined at trial compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish, depression, humiliation, embarrassment, and emotional distress;

c. An award of any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial;

d. An award of punitive damages;

e. An award of all costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fee to the fullest extent permitted by law;

f. An award of pre-judgment interest on all amounts due; and

g. Such other relief as this Court may deem just and proper.

Dated: New York, New York
    March 7, 2022

**BRUSTEIN LAW, PLLC**

By:_____/s/_____
        Evan Brustein
        Attorneys for Plaintiff
        299 Broadway, 17th Floor
        New York, NY 10007
        (212) 233-3900

**RISMAN & RISMAN, P.C.**

By:_____/s/_____
        Maya Risman, Esq.
        Attorneys for Plaintiff
        299 Broadway – 17th Floor
        New York, New York 10007
        (212) 233-6400